United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EDWARD LINDSEY,

          Petitioner,

   v.

ANTHONY HEDGPETH,

          Respondent.
_____/

No. C 11-0638 SI (PR)

**ORDER DENYING PETITION FOR
WRIT OF HABEAS CORPUS**

**INTRODUCTION**

Petitioner seeks federal habeas relief from his state convictions. For the reasons set forth below, his petition for such relief is DENIED.

**BACKGROUND**

In 2008, petitioner was convicted by an Alameda County Superior Court jury of first degree murder, consequent to which petitioner was sentenced to 25 years-to-life. Evidence presented at trial demonstrated that in 2004 petitioner strangled to death Ashkea Coleman, a prostitute, whose corpse was found in petitioner's van, which also contained a condom holding sperm having petitioner's DNA profile. Petitioner was denied relief on state judicial review.

1    This federal habeas petition followed.

2         As grounds for federal habeas relief, petitioner claims that (1) his right to due process was

3    violated by the admission of testimony from a forensic pathologist; (2) defense counsel rendered

4    ineffective assistance; (3) the trial court's refusal to instruct the jury on a lesser-included offense

5    deprived him of his right to due process; (4) a supplemental jury instruction violated his right

6    to due process; and (5) his right to due process was violated because there was insufficient

7    evidence of premeditation and deliberation.

8

9                              **STANDARD OF REVIEW**

10        This Court may entertain a petition for writ of habeas corpus "in behalf of a person in

11   custody pursuant to the judgment of a State court only on the ground that he is in custody in

12   violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  The

13   petition may not be granted with respect to any claim that was adjudicated on the merits in state

14   court unless the state court's adjudication of the claim: "(1) resulted in a decision that was

15   contrary to, or involved an unreasonable application of, clearly established Federal law, as

16   determined by the Supreme Court of the United States; or (2) resulted in a decision that was

17   based on an unreasonable determination of the facts in light of the evidence presented in the

18   State court proceeding."  28 U.S.C. § 2254(d).

19        "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court

20   arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or

21   if the state court decides a case differently than [the] Court has on a set of materially

22   indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412–13 (2000).  "Under the

23   'unreasonable application' clause, a federal habeas court may grant the writ if the state court

24   identifies the correct governing legal principle from [the] Court's decisions but unreasonably

25   applies that principle to the facts of the prisoner's case."  *Id.* at 413.  "[A] federal habeas court

26   may not issue the writ simply because that court concludes in its independent judgment that the

27   relevant state-court decision applied clearly established federal law erroneously or incorrectly.

28

United States District Court
For the Northern District of California

2

Rather, that application must also be unreasonable." *Id.* at 411.  A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 409.

**DISCUSSION**

**1.    Admission of Testimony**

At trial, Paul Herrmann, a forensic pathologist, testified for the prosecution as an expert witness on the cause of the victim's death.  Herrmann testified that the victim died of asphyxia caused by strangulation.  He estimated that her death took roughly a minute, though, upon further questioning by the court, asserted that it may have taken a maximum of four minutes for her death to occur.  (Ans., Ex. E at 4.)  Petitioner claims that admission of this testimony violated his right to due process because Herrmann was not qualified to testify about how long it would take to cause death, though he was qualified as an expert as to the cause of the death itself.

The state appellate court concluded that the record "amply supported" the trial court's determination that Herrmann was qualified to render such an opinion, and rejected petitioner's claim:

> Herrmann is a medical doctor specializing in forensic pathology and he estimated that he had performed over 13,000 autopsies in his career.  He had testified about 7,000 times as an expert witness as to the cause of death.  Additionally, he performed seven or eight autopsies each year on victims of either manual or ligature strangulation.  Thus, the record amply supported the trial court's determination that Herrmann qualified as an expert to give his opinion about the cause of Coleman's death.

> [Petitioner] contends that Herrmann should not have been able to testify about the length of time the victim was strangled because there was a lack of foundation for this testimony.  [Petitioner]'s principal objection is that Herrmann did not base his testimony on prior studies as he admitted there had been no studies conducted to determine how long it takes for a petechial hemorrhage to occur during strangulation.  [Petitioner] asserts that Herrmann's experience of conducting autopsies could not provide him with knowledge about how long it would take for a person to die by strangulation.

> [Petitioner]'s objection has little merit. Obviously, researchers cannot conduct experiments on the length of time necessary to cause death by manual strangulation. Such research, however, was not necessary as Herrmann could base his conclusion on his examination of Coleman, his understanding of human anatomy, and his prior experience of examining people who had been strangled.

United States District Court
For the Northern District of California

1

2

3

4

5

He testified that his estimate of the length of time Coleman was being strangled was based on the number and size of the hemorrhages she suffered, especially those around the eyes.  He emphasized that he knew "that pressure had to be applied over a prolonged period of time for that number of blood vessels to break . . . "  Given his experience and medical knowledge he estimated that it would take a minute to one and one-half minutes of pressure on the jugular veins for this to occur.  This testimony about how long it took to strangle Coleman certainly was within the subject matter of his expertise.

6

(Ans., Ex. E at 7–8.)

7

8

9

10

11

12

The admission of evidence is not subject to federal habeas review unless a specific constitutional guarantee is violated or the error is of such magnitude that the result is a denial of the fundamentally fair trial guaranteed by due process.  *See Henry v. Kernan*, 197 F.3d 1021, 1031 (9th Cir. 1999).  Habeas relief may be granted, however, only if there are no permissible inferences that the jury may draw from the evidence.  *See Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991).

13

14

15

16

17

18

19

20

21

22

23

24

25

Petitioner's claim is without merit.  The state appellate court reasonably determined that Herrmann was qualified to render an opinion as to how long Coleman's death took, as the record shows.  Not only has Herrmann performed thousands of autopsies over the years, but strangulation victims are the subject of his autopsies every year.  It is simply not supportable to contend that such experience would not make him qualified to testify as to how long it took for Coleman to be strangled to death.  Also, his estimation was an interpretation based on the physical evidence he observed, not guesswork.  Petitioner's right to due process was not, therefore, violated.  Relief is also precluded because, per *Jammal*, the jurors could have drawn the permissible inference as to how long it took to kill Coleman.  Furthermore, petitioner cannot obtain relief because the Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009).  Petitioner's claim is DENIED.

26

27

28

United States District Court
For the Northern District of California

4

United States District Court
For the Northern District of California

1

### 2.      Assistance of Counsel

Petitioner claims that defense counsel rendered ineffective assistance by failing to (A) challenge the forensic laboratory evidence as being contaminated, (B) object to the testimony of a criminalist, and (c) present an erotic asphyxia defense.  Petitioner raised these claims only on state collateral review.

Claims of ineffective assistance of counsel are examined under *Strickland v. Washington*, 466 U.S. 668 (1984).  In order to prevail on a claim of ineffectiveness of counsel, the petitioner must establish two factors.  First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms, *id.* at 687–68, "not whether it deviated from best practices or most common custom," *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011) (citing *Strickland*, 466 U.S. at 690 ).  "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Richter*, 131 S. Ct. at 787 (quoting *Strickland*, 466 U.S. at 689).  Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  *Id.*  Where the defendant is challenging his conviction, the appropriate question is "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

#### A.      Challenge to Forensic Laboratory Evidence

Petitioner claims that defense counsel rendered ineffective assistance by not challenging some evidence as contaminated.  Petitioner bases this claim on an alleged discrepancy between Dr. Herrmann's autopsy report and the trial testimony of an Oakland Police department criminalist, Amanita Lemon, regarding fingernails recovered from the crime scene.  Herrmann's autopsy report states: "The fingernails bilaterally are long.  They are false nails.  They show a

United States District Court
For the Northern District of California

worn, white coloration at their tips.  None of the nails show any evidence of foreign material present.  None of them show any evidence of trauma."  (Pet., Ex. G at 3.)  Lemon, who also examined these fingernails, testified at trial that three of the nails "seemed to have short hairs or fibers and debris attached."  (Ans., Ex. B, Vol. 3 at 493.)  Lemon also testified that petitioner was <u>excluded</u> as the source of these hairs, fibers, or debris.  (*Id.* at 495–96.)  Petitioner contends that Herrmann's failure to note these hairs and fibers is discrepant with Lemon's testimony regarding her analysis.  Defense counsel, petitioner asserts, should have challenged such testimony and other evidence as contaminated.

Petitioner's claim lacks merit because the evidence was irrelevant to his guilt or innocence, as he was excluded as the source of the miscellaneous materials attached to the nails. Defense counsel, then, had no basis to make an objection.  Even if the nail evidence were contaminated or otherwise unreliable, it was not inculpatory, nor has petitioner shown that this alleged contamination indicated that other evidence was also contaminated.  Because it is both reasonable and not prejudicial for defense counsel to forgo a meritless objection, *see Juan H. v. Allen*, 408 F.3d 1262, 1273 (9th Cir. 2005), petitioner's claim is DENIED.

**B.    Objection to Criminalist's Testimony**

Lemon was a forensic biologist assigned to the Coleman murder investigation.  At trial, she testified that she extracted DNA from evidence taken from the crime scene, and compared, and matched, the DNA profiles of the sperm in the condom and DNA taken from petitioner. (Ans., Ex. B, Vol. 3 at 457–84.)  Lemon testified that 1 in 771 billion persons share petitioner's genetic profile, and explained that this number was arrived at using "basic multiplication."  (*Id.* at 483–85.)  She also testified that her supervisor actually performed the calculation in this case. 485.)  Defense counsel, according to petitioner, should have objected on Confrontation Clause grounds to Lemon's testimony regarding probability because it was her supervisor, not Lemon, who made the actual calculation.

1
2
3
4
5
6
7
8

The Confrontation Clause of the Sixth Amendment provides that in criminal cases the accused has the right to "be confronted with the witnesses against him." U.S. Const. amend. VI. The ultimate goal of the Confrontation Clause is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee. *Crawford v. Washington*, 541 U.S. 36, 61 (2004). It commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination. *Id.* Confrontation Clause claims are subject to harmless error analysis. *See United States v. McClain*, 377 F.3d 219, 222 (2d Cir. 2004).

9
10
11
12
13
14
15
16
17
18
19
20

Petitioner has not shown that defense counsel's performance was deficient. First, Lemon had not only performed, and testified to the circumstances of, the DNA extraction and identification, she also testified knowledgeably about how one calculates the probability ratio. Considering this and how easy it would have been for her to make the calculation herself, even on the stand, the trial court would almost certainly rejected an objection by defense counsel. Second, counsel's performance was objectively reasonable under prevailing professional norms. At the time of trial, the Supreme Court had not yet issued *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009), in which the Court held that certificates of state laboratory analysts are testimonial hearsay, and therefore subject to Confrontation Clause limitations. Defense counsel cannot be ineffective for failing to foresee a change in the law. *Styers v. Schriro*, 547 F.3d 1026, 1032 (9th Cir. 2008). In sum, it was both reasonable and not prejudicial for defense counsel to forgo a meritless objection. *See Juan H.*, 408 F.3d at 1273.

21
22
23
24
25
26

The strength of the evidence against petitioner also militates against a finding of prejudice. First, the victim was found in petitioner's van. (Ans., Ex. E at 2–3.) Second, the DNA profile extracted from sperm in a condom found in that van matched petitioner's DNA profile. (*Id.* at 5.) Third, petitioner was seen by police walking away from the van while the corpse was still warm. (*Id.* at 3.) Fourth, petitioner was arrested near to the crime scene on the night of the homicide. (*Id.*, Ex. B, Vol. 3 at 418–26.) Petitioner's claim is DENIED.

27
28

7

C.     **Erotic Asphyxia Defense**

Petitioner claims that defense counsel rendered ineffective assistance by failing to mount a defense that Coleman's death was an accident resulting from consensual erotic asphyxia. He bases this claim solely on the lack of trauma to the body. The record does not support petitioner's assertion that the corpse showed a lack of injury. Coleman's corpse showed evidence of heavy trauma, as Herrmann testified: "[petitioner] strangled the victim for probably one to one and one-half minutes and squeezed Coleman's neck so hard that he broke a bone. Herrmann found abrasions on Coleman's throat, which suggested that Coleman tried to pull [petitioner's] hands away. The evidence regarding the scratches showed that [petitioner] needed to adjust his grip several times." (Ans., Ex. E at 16.) This record supports a finding that the strangulation was not consensual, and also undercuts the reverse conclusion. On such a record, it was not unreasonable for defense counsel to forgo pursuing such a defense. Because the physical evidence does not support such a defense, petitioner, as the sole witness to the events leading to Coleman's death, likely would have to testify for the erotic asphyxia defense to succeed. Petitioner's testimony about the night's events may well have made his defense less effective. He would have to answer questions regarding highly inculpatory evidence, and then explain the exact details of the alleged erotic asphyxia. It is reasonable to assume that such admissions by petitioner would more likely damage than aid his defense.

Petitioner's further claim that defense counsel should have called an expert witness on erotic asphyxia. This claim is without merit. First, it was reasonable for counsel to decline to pursue such defense, and therefore reasonable not to call such an expert. Second, petitioner has failed to specify what information such a witness would have offered, and how such specific information would have aided his defense. Failure to identify such information is a failure to show that trial counsel's performance was deficient, or that the alleged deficiency resulted in prejudice. *See Gallego v. McDaniel*, 124 F.3d 1065, 1077 (9th Cir. 1997). Accordingly, petitioner has not shown that defense counsel's performance was deficient, nor that he was suffered prejudice. Accordingly, the claim is DENIED.

United States District Court

For the Northern District of California

1

**3.     Lesser-included Offense Instruction**

2      Petitioner claims that the trial court's refusal to instruct the jury on the lesser-included

3   offense of involuntary manslaughter deprived him of his right to due process.  This claim fails.

4    It is clear the failure of a state trial court to instruct on lesser-included offenses in a non-capital

5   case does not present a federal constitutional claim.  *See Solis v. Garcia*, 219 F.3d 922, 929 (9th

6   Cir. 2000).  However, "the defendant's right to adequate jury instructions on his or her theory

7   of the case might, in some cases, constitute an exception to the general rule." *Id.* at 929 (citation

8   omitted).  *Solis* suggests there must be substantial evidence to warrant the instruction on the

9   lesser-included offense. *See id.* at 929–30.  Petitioner has made no showing that his theory of

10  the case constituted an exception to the general rule.   Accordingly, petitioner's claim is

11  DENIED.

12

13  **4.     Supplemental Jury Instruction**

14      Petitioner claims without elaboration that the trial court's supplemental jury instruction

15  on premeditation violated his right to due process because it relieved the prosecution of the

16  burden of proving that he deliberated and premeditated the murder prior to the act that caused

17  Coleman's death.  Here are the relevant facts:

18      While deliberating, the jury asked the following:  'For first degree murder
        deliberation/premeditation, may premeditation happen after commencement of the
19      act that caused death?  Or must the deliberation be before commencement of the
        act?'  The court, over the defense's objection, provided the following written
20      response:  'The premeditation and deliberation required to find that an unlawful
        killing with express malice is murder in the first degree may occur at any time
21      prior to the moment of death.'

22  (Ans., Ex. E at 11.)  The state appellate court rejected this claim because the instruction correctly

23  stated the law.  (*Id.* at 14–15.)

24      Petitioner's claim is without merit.  First, this Court must defer to the state appellate

25  court's determination that the supplemental instruction correctly stated the law. *See Bradshaw*

26  *v. Richey*, 546 U.S. 74, 76 (2005).  This law is entirely consonant with that given in the initial

27  jury instructions, to which instructions petitioner offers no objection.  Second, nothing in the

28

United States District Court
For the Northern District of California

1  supplemental instruction lowers the prosecution's constitutional burden to prove the

2  premeditation and deliberation, the elements of first degree murder, true beyond a reasonable

3  doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Also, as discussed below, there was

4  sufficient evidence to support a finding that petitioner acted with premeditation and deliberation

5  prior to committing the act resulting in Coleman's death. Accordingly, petitioner's claim is

6  DENIED.

7

8  **5.      Sufficiency of Evidence of Premeditation and Deliberation**

9          Petitioner claims that there was insufficient evidence to support the jury's finding that he

10  acted with premeditation and deliberation. The state appellate court found sufficient evidence

11  in the record to support the jury's determination, and rejected petitioner's claim:

12          In the present case, the manner of strangulation supported a finding of deliberation
        and premeditation. Herrmann testified about the extent of the victim's injuries.
13          He reported that [petitioner] strangled the victim for probably one to one and
        one-half minutes and squeezed Coleman's neck so hard that he broke a bone.
14          Herrmann found abrasions on Coleman's throat, which suggested that Coleman
        tried to pull [petitioner]'s hands away. The evidence regarding the scratches
15          showed that [petitioner] needed to adjust his grip several times and therefore he
        had time to contemplate his actions.
16
            There was also some evidence of planning as the evidence indicated that
17          [petitioner] was waiting for Coleman on 34th and San Pablo Avenues. He not
        only contacted her or someone else to have a "date" with her but he also had her
18          get into his van and then drove to a different location. [Citation omitted.]

19          Further, [petitioner]'s behavior after he killed Coleman provided evidence the jury
        could consider as indicating that he acted with premeditation and deliberation. A
20          jury may consider a [petitioner]'s actions after the murder in relation to the
        manner of killing to show that murder was not impulsive. [Citation omitted.]
21          Here, Officer Dutton saw [petitioner] calmly walking away from the murder
        scene. [Petitioner] made a number of calls to the mother of his child to have her
22          change the registration of the van. [Petitioner]'s calmness, attempt to hide, and
        calls to the mother of his child showed that he was not overwrought with emotion
23          and supported a conclusion that he had premeditated and deliberated the murder.

24  (Ans., Ex. E at 16–17.)

25          A federal court reviewing collaterally a state court conviction does not determine

26  whether it is satisfied that the evidence established guilt beyond a reasonable doubt. *Payne v.*

27  *Borg*, 982 F.2d 335, 338 (9th Cir. 1992). Nor does a federal habeas court in general question

28

a jury's credibility determinations, which are entitled to near-total deference. *Jackson v. Virginia*, 443 U.S. 307, 326 (1979). The federal court determines only whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt, may the writ be granted. *Id.* at 324. "[T]he only question under *Jackson* is whether that [jury] finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, No. 11–1053, slip op. 7 (U.S. May 29, 2012).

In California, first degree murder is the premeditated and deliberate unlawful killing of another with malice aforethought. *See* Cal. Pen. Code §§ 187 & 189. A premeditated killing under California law is a "killing [that] was the result of preexisting reflection and weighing of considerations rather than mere unconsidered or rash impulse." *People v. Prince*, 40 Cal. 4th 1179, 1253 (2007) (citations omitted). The process of premeditation and deliberation "does not require any extended period of time." *People v. Koontz*, 27 Cal.4th 1041, 1080 (2002) (citations omitted). "The true test is not the duration of time as much as it is the extent of the reflection. Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly." *Id.* Planning activity, motive and the manner of the killing are significant, though not the exclusive, factors to consider when determining whether the killing was a result of preexisting reflection. *Prince*, 40 Cal. 4th at 1253 (citations omitted).

Under these legal principles, petitioner's claim cannot succeed. The record supports the conclusion that a rational trier of fact could have found the elements of premeditation and deliberation true beyond a reasonable doubt. As the state appellate court determined, the duration of the strangling, the evidence that petitioner readjusted his grip on Coleman's throat, the severity of her injuries, the scratches on petitioner, his hiring and transportation of Coleman, and his actions after the homicide reasonably support the jury's determination that there was premeditation and deliberation. Put another way, there is evidence that petitioner strangled Coleman despite her attempts to resist, that he needed to adjust his grip more than once in order

to continue strangling her (perhaps because of her resistance), and that the strangling took at least a minute show that the homicide was the product of preexisting reflection.  On such a record, petitioner's claim that there was insufficient evidence is DENIED.

## CONCLUSION

The state court's denial of petitioner's claims did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Accordingly, the petition is DENIED.

A certificate of appealability will not issue.  Reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Petitioner may seek a certificate of appealability from the Court of Appeals.

The Clerk shall enter judgment in favor of respondent and close the file.

**IT IS SO ORDERED**.

DATED:  July 10, 2012

SUSAN ILLSTON
United States District Judge

United States District Court
For the Northern District of California

12